IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MIDAMERICA DIVISION INC. D/B/A/ HCA-MIDWEST DIVISION,<br><br>*Plaintiff,*<br><br>v.<br><br>FIRST HEALTH GROUP CORP. et al.,<br><br>*Defendants.* | Case No. 23-2551-EFM-RES |

**MEMORANDUM AND ORDER**

Before the Court is Defendant First Health Group Corp. ("First Health")'s Motion to Dismiss (Doc. 96) and Defendant Cox Healthplans, LLC ("Cox")'s Motion to Dismiss Counts I-IV (Doc. 99). Plaintiff MidAmerica Division Inc. d/b/a HCA-Midwest Division asserts several claims against both Defendants in its Second Amended Complaint. Defendants ask this Court to dismiss each of the claims asserted against them. For the following reasons, the Court grants in part and denies in part Defendants' motions.

**I.      Factual and Procedural Background**[1]

This case arises out of two separate agreements to provide medical services at lower rates. Plaintiff provides medical services as a hospital. First Health establishes a network of hospitals that payors can access for medical services at lower rates. Payors are employers, insurers, and

---

[1] All facts were taken from Plaintiffs' Second Amended Complaint and accompanying written contracts.

other parties—including Cox. To establish this network, First Health contracts with hospitals and payors in two separate agreements.

On November 1, 2004, Plaintiff executed a Model Facility Agreement ("Provider Agreement") with First Health. The Provider Agreement set Plaintiff's rates for medical services at a lower rate for First Health's payors. Article 1.6 of the Provider Agreement states "First Health's Payor Agreement with each Payor will require Payor to comply with terms and conditions of Article 4 (Payment Provisions) of this Contract." Article 4 of the Provider Agreement governs the payment procedures and states that "late payment may constitute material breach of this contract." Under Article 4 of the Provider Agreement, First Health has the authority to collect unpaid amounts from payors and transfer those amounts to Plaintiff.

The Provider Agreement also encompasses how utilization-review programs[2] are to be structured and how audits are to be conducted. Article 3 governs the structure of utilization-review programs and requires that, if a payor utilizes a program, the program should be "substantially consistent with Appendix B [of the Provider Agreement.]" The Provider Agreement details how audits are to be conducted in Article 5. Specifically, Article 5 states "[w]ith at least seventy-two (72) hours notice during normal working hours, [Plaintiff] shall make available to First Health or the Payor[s] . . . all [records and data pertaining to payments, claims and services]."

On January 1, 2010, First Health executed a Provider Network Services Agreement ("Network Agreement") with Cox. This agreement enables members of Cox to access First Health's network of hospitals—including Plaintiff—in exchange for Cox reimbursing the

---

[2] A utilization-review program's primary objective is to "certify for payment of benefits that inpatient health care services meet the [health plan]'s, or where applicable, the State law's, definition of medical necessity and are provided the appropriate level of care."

hospitals. The Network Agreement disclaims the existence of any third-party beneficiaries in Article 8. The disclaimer explicitly states:

> "[t]he parties have not created or established any third-party beneficiary status or rights in any person or entity not a party hereto including, but not limited to, any Covered Person, provider, subcontractor, or other third-party, and no such third-party will have any right to enforce any right or enjoy any benefit created or established under [the Network Agreement]."

Pursuant to these agreements, Plaintiff provided medical services to Cox members. Cox failed to reimburse Plaintiff for the entirety of the billed charges. First Health did not collect the unpaid amounts from Cox and transfer them to Plaintiff. Consequently, Plaintiff commenced this action against Defendants.

On June 10, 2024, Plaintiff filed its Second Amended Complaint. The Second Amended Complaint alleges various claims against First Health and Cox. On July 8, 2024, First Health filed its Motion to Dismiss asking this Court to dismiss the claims asserted against it. On the same day, Cox filed its Motion to Dismiss Counts I-IV asserted against it. Plaintiff filed a Response to each motion on August 12, 2024. On September 6, 2024, Defendants filed their respective Replies. Defendants' Motions are fully briefed and ripe for ruling.

## II.     Legal Standard

### A.     Motion to Dismiss

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible

---

[3] Fed. R. Civ. P. 12(b)(6).

on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[6] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[7] Viewing the complaint in this manner, the court must decide whether the plaintiffs' allegations give rise to more than speculative possibilities.[8] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff 'ha[s] not nudged their claims across the line from conceivable to plausible.'"[9]

Generally, the Court must convert a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment if matters outside the pleadings are reviewed.[10] However, when documents are attached to or referenced in the complaint the Court may consider the documents if they are central to plaintiffs' claims and the parties do not dispute the documents' authenticity.[11] Thus, here, the Court

---

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)).

[9] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[10] Fed. R. Civ. P. 12(d).

[11] *See GFF Corp. v. Assoc'd Wholesale Grocers*, 130 F.3d 1381, 1385 (10th Cir. 1997) (explaining "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied").

will consider the parties' attachments but analyze the parties' arguments in light of Rule 12(b)(6)'s requirements.

### III.   Analysis

**A.   First Health's Motion to Dismiss**

Plaintiff asserts a breach of contract claim and seeks declaratory judgment against First Health. First Health asks this Court to dismiss each of the claims against it; however, First Health only proffers arguments and authority for why the breach of contract claim against it should be dismissed. As such, the Court will only determine whether the breach of contract claim should be dismissed.

The breach of contract claim against First Health is brought under two different theories. First, First Health breached the express terms of the contract. Second, First Health breached the implied covenant of good faith and fair dealing. The elements of a breach of contract claim under Kansas law are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."[12] Here, First Health argues that Plaintiff fails to sufficiently plead the fourth element—that First Health breached the contract. The Court will first consider whether Plaintiff sufficiently pleads a breach of contract claim under its first theory.

   *1.   Express terms of the contract*

Plaintiff asserts that it sufficiently pleads that First Health breached the Provider Agreement by failing to collect unpaid amounts from the payors, conducting audits without

---

[12] *Stechschulte v. Jennings*, 297 Kan. 2, 298 P.3d 1083, 1098 (2013).

providing the required notice, and failing to ensure the payors' utilization-review programs are compliant with Appendix B. The Court will address each assertion of breach of the express terms of the contract in turn.

First, Plaintiff alleges that First Health breached the Provider Agreement by failing to collect the unpaid amounts from the payors. First Health argues that it had no duty to pay for the medical services rendered and that it was not obligated to collect and pay the unpaid amounts to Plaintiff. However, Plaintiff alleges that First Health was authorized to collect unpaid amounts from the payors under Article 4 of the Provider Agreement and did not do so. Article 4 of the Provider Agreement states that late payments may constitute a material breach of the contract. Additionally, Article 1.6 of the Provider Agreement states "First Health's Payor Agreement with each Payor will require Payor to comply with terms and conditions of Article 4 (Payment Provisions) of this Contract." Accepting these factual allegations as true, it is plausible that First Health breached the Provider Agreement by failing to collect and pay the unpaid amounts. As such, the Court denies First Health's Motion on this ground.

Next, Plaintiff asserts that First Health was required to ensure that the payors provided at least 72 hours of notice before conducting an audit, and it breached the Provider Agreement by failing to do so. First Health argues that the Provider Agreement did not impose a duty to provide 72 hours of notice before conducting an audit, but instead imposed a duty on Plaintiff to make records and data available to First Health or the payors within 72 hours. Article 5 of the Provider Agreement states: "[w]ith at least seventy-two (72) hours notice during normal working hours, [Plaintiff] shall make available to First Health or the Payor[s] . . . all [records and data pertaining to payments, claims and services]." However, Article 1.6 of the Provider Agreement, only requires First Health to ensure the payors comply with the terms and conditions of Article 4. It does not

-6-

impose a similar duty on First Health related to payors' compliance with Article 5. Plaintiff did not allege that First Health failed to comply with the notice requirements of article 5, only that it failed to ensure that the payors did. Consequently, Plaintiff did not sufficiently plead that First Health breached the 72 hours notice provision of the Provider Agreement. Thus, the Court grants First Health's Motion as to this breach of contract theory.

Finally, Plaintiff contends that First Health breached the express terms of the contract by failing to ensure the payors' utilization-review programs are compliant with Appendix B. First Health argues that it did not have a duty to ensure the payors' utilization-review programs are complaint with Appendix B. The utilization-review programs are detailed in Article 3 of the Provider Agreement. As noted above, the Provider Agreement only requires First Health to ensure the payors comply with Article 4 of the Provider Agreement. It does not impose a similar duty on First Health related to Article 3. Accordingly, First Health had no duty to ensure the payors' utilization-review programs complied with Appendix B. As a result, Plaintiff did not sufficiently plead that First Health breached the utilization-review program section of the Provider Agreement. Therefore, the Court grants First Health's Motion as to this ground.

　　2.　　*Implied covenant of good faith and fair dealing*

Plaintiff proffers that First Health breached the Agreement under a secondary theory that it breached the implied covenant of good faith and fair dealing. To state a claim for breach of the covenant of good faith and fair dealing under Kansas law, the plaintiff must "(1) plead a cause of action for breach of contract, not a separate cause of action for breach of duty of good faith, and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the

good faith spirit of that term."[13] "Breach of the implied covenant of good faith and fair dealing is not a separate claim, but rather a 'legal argument related to a breach-of-contract claim.' "[14]

Here, First Health argues that Plaintiff's secondary theory of a breach of the implied covenant of good faith and fair dealing functions as an impermissible standalone claim. The Court is inclined to agree. While Plaintiff pleads the breach of the implied covenant of good faith and fair dealing as a secondary theory for breach of contract, it fails to adequately plead what term of the contract that First Health allegedly violated by failing to abide by the good faith spirit of that term. Instead, Plaintiff makes broad conclusory allegations that First Health owed Plaintiff a duty of good faith and fair dealing under the Agreement, First Health's conduct injured Plaintiff's rights to receive the fruits of the agreement, and First Health breached the covenant of good faith and fair dealing. Plaintiff wholly fails to point to a specific term of the Provider Agreement, and thus, fails to allege the First Health failed to abide by the covenant of good faith and fair dealing. Consequently, Plaintiff fails to sufficiently plead a breach of the implied covenant of good faith and fair dealing. Therefore, the Court grants First Health's motion as to this theory.

**B.     Cox's Motion to Dismiss**

Plaintiff asserts a breach of an implied contract claim, seeks declaratory judgment, asserts an alternative a third-party beneficiary breach of contract claim, and asserts a quantum meruit claim. Cox asks this Court to dismiss each of the claims against it. The Court will address each in turn.

---

[13] *Terra Venture, Inc. v. JDN Real Estate-Overland Park, LP.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (quoting *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)).

[14] *Steven Volkswagen, Inc. v. Zurich Am. Ins. Co.*, 2020 WL 2615764, at *7 (D. Kan. May 22, 2020) (quoting *Classico, LLC v. United Fire and Cas. Co.*, 386 P.3d 529, 2016 WL 7324451, at *5 (Kan. Ct. App. 2016)).

1. *Implied contract*

Cox contends the breach of contract claim asserted against it should be dismissed because express contracts preclude the existence of an implied contract. An express contract can be either written or oral, and exists whenever there is a mutual meeting of the minds upon any contractual proposition.[15] In contrast are implied contracts, of which there are two types: implied-in-fact and implied-in-law. An implied-in-fact contract "arises from the facts and circumstances showing mutual intent to contract."[16] Thus, an implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed.[17] An implied-in-law contract, or quasi contract, however, does not rest on an actual agreement. Instead, it is one of "legal fiction created by the courts to ensure justice or to prevent unjust enrichment."[18] As a general rule, the existence of an express contract precludes the implication that an implied contract exists covering the same subject matter.[19]

Here, Plaintiff alleges that the Provider Agreement and the Network Agreement create an implied contract between Cox, First Health, and Plaintiff. However, the express terms of the Provider Agreement and the Network Agreement are what Plaintiff relies upon to create the

---

[15] *Land v. Midwest Off. Tech., Inc.*, 114 F.Supp.2d 1121, 1146 n. 7 (D. Kan. 2000); *Ellis v. Berry*, 19 Kan. App. 2d 105, 867 P.2d 1063, 1066 (1993) (citing *In re Rogers' Est.*, 184 Kan. 24, 334 P.2d 830, 834 (1959)).

[16] *Smith v. Amoco Prod. Co.*, 272 Kan. 58, 31 P.3d 255, 265 (2001).

[17] *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir.1987) (citing *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 597 (1923)).

[18] *Smith*, 31 P.3d at 265; *see also Mai v. Youtsey*, 231 Kan. 419, 646 P.2d 475, 479 (1982).

[19] *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1094 (10th Cir. 2007) (applying Kansas law); *see also Cross Country Land Servs., Inc. v. PB Telecomms., Inc.*, 276 F. App'x 825, 834 (10th Cir. 2008) (under Colorado law, an implied contract cannot exist where an express contract covers the same subject matter); *Barry Mogul & Assocs. v. Terrestris Dev. Co.*, 267 Ill. App. 3d 742, 643 N.E.2d 245, 252 (1994) (general rule is that no quasi-contractual claims may exist where there is an express contract between the parties); *Ericson v. Charles*, 108 Kan. 205, 194 P. 652, 653 (1921) (existence of express contract precludes existence of implied contract); *Shumaker v. Hazen*, 372 P.2d 873, 875 (Okla. 1962) (stating as a general proposition, "[t]here cannot be an express and an implied contract for the same thing existing at the same time").

obligations of the alleged implied contract. As such, the Provider Agreement and the Network Agreement are express contracts that cover the same subject matter that the alleged implied contract does. Consequently, the Provider Agreement and the Network Agreement preclude the alleged implied contract. Therefore, the Court grants Cox's motion as to the implied breach of contract claim.

### 2. *Declaratory judgment*

Plaintiff seeks declaratory judgment that the implied contract is a valid and binding contract between Cox, First Health, and itself. Cox asserts the same arguments for dismissal against this claim as it does in Plaintiff's implied contract claim. As noted above, the Provider Agreement and the Network Agreement preclude the alleged implied contract. Thus, the Court grants Cox's motion as to Plaintiff's request for declaratory judgment.

### 3. *Third-party beneficiary*

An alternative breach of contract claim is alleged against Cox under the theory that Plaintiff is an intended third-party beneficiary of the Network Agreement. A third-party beneficiary may sue to enforce a contract if the contracting parties intended the third party receive a direct benefit from the contract.[20] The third party need not be the exclusive beneficiary of the contract or personally named in the contract.[21] However, the third party must show he is identifiable as the

---

[20] *Tri-State Truck Ins., Ltd. v. First Nat'l Bank of Wamego, Kan.*, 535 F. App'x 653, 659–60 (10th Cir. 2013) (stating only intended third-party beneficiaries not incidental beneficiaries have standing to sue for breach of contract) (citing *State ex rel. Stovall v. Reliance Ins. Co.*, 278 Kan. 777, 107 P.3d 1291, 1230–31) (further citations omitted).

[21] *Id.* at 660 (citing *Fasse v. Lower Heating & Air Conditioning, Inc.*, 241 Kan. 387, 736 P.2d 930, 932 (1987); *Hartford Fire Ins. Co. v. W. Fire Ins. Co.*, 226 Kan. 197, 597 P.2d 622, 632 (1979)).

person intended to benefit from the contract by the parties' language[22] and "the existence of some provision in the contract that operates to his benefit."[23]

Here, Cox asserts this alternative breach of contract claim should be dismissed because Plaintiff is not an intended third-party beneficiary, and the Network Agreement expressly disclaims the existence of any third-party beneficiaries. The parties to the Network Agreement are First Health and Cox, and Article 8 of the Network Agreement explicitly states "[t]he parties have not created or established any third-party beneficiary status or rights in any person or entity not a party hereto." Plaintiff fails to make any allegations that might warrant disregarding that disclaimer. However, Plaintiff does argue that because "providers" are referenced throughout the Network Agreements, the disclaimer should be void. Plaintiff contends that it qualifies as a "provider." While Plaintiff may certainly qualify as a "provider" under the Network Agreement, the disclaimer expressly states that "providers" do not have any third-party beneficiary status. As a result, the Network Agreement precludes a breach of contract claim being brought under a third-party beneficiary theory. Therefore, the Court grants Cox's motion as to this alternative claim.

    4.    *Quantum merit*

Cox also moves to dismiss on Plaintiff's alternative claim that it is entitled to equitable relief under the theory of *quantum meruit*. To establish a claim for *quantum meruit* under Kansas law, Plaintiff must prove three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the

---

[22] *Tri-State Truck Ins.*, 535 F. App'x at 660 (citing *Hartford Fire Ins. Co.*, 597 P.2d at 632).

[23] *Id.* (quoting *Stovall*, 107 P.3d at 1231) (further citations omitted).

defendant to retain the benefit without payment of its value.[24] Kansas recognizes *quantum meruit* as an equitable claim for relief to permit recovery where no valid contract exists.[25]

Here, Cox asserts Plaintiff's *quantum meruit* claim should be dismissed because a written contract governs the parties' rights and obligations. However, the Network Agreement governs the rights and obligations between Cox and First Health; and the Provider Agreement governs the rights and obligations between First Health and Plaintiff. There is not a valid contract that governs the alleged rights and obligations between Cox and Plaintiff. Consequently, a valid contract does not preclude a claim of quantum meruit. Cox makes no other arguments for dismissal regarding this claim. As a result, the Court denies Cox's motion as to Plaintiff's *quantum meruit* claim.

**IT IS THEREFORE ORDERED** that Defendant First Health's Motion to Dismiss (Doc. 96) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendant Cox's Motion to Dismiss Counts I-IV (Doc. 99) is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

Dated this 25h day of November, 2024.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[24] *Midwest Grain Prods. Inc. v. Envirofuels Mktg., Inc.*, 1998 WL 63077, at *5 (applying Kansas law and citing *J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 758 P.2d 738, 745 (1988)).

[25] *Bettis v. Hall*, 2011 WL 1430327, at *4 (D. Kan. Apr. 14, 2011) (considering several cases and concluding "quantum meruit is a plausible claim when the existence of the contract is disputed or no contract exists that binds the parties to action.").