UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MIDAMERICA DIVISION, INC., D/B/A
HCA-MIDWEST DIVISION,

    Plaintiff,

    v.

FIRST HEALTH GROUP CORP. et al.,

    Defendants.

Case No. 23-2551-EFM-RES

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff MidAmerica Division, Inc. d/b/a HCA Midwest Division's Motion for Leave to File a Third Amended Complaint. ECF No. 146. Defendant First Health Group Corp. ("Defendant" or "First Health") has filed a response in opposition. ECF No. 152. Defendant Cox HealthPlans, LLC ("Cox") did not file a response to the Motion, and the time to do so has passed. Plaintiff also filed a reply in further support of the Motion. ECF No. 155.

For the reasons explained below, the Motion is denied.

**I.    BACKGROUND**

The Chief District Judge's order on Defendants' motions to dismiss sets forth the facts giving rise to this case in greater detail. *See generally MidAmerica Div. Inc. v. First Health Grp. Corp.*, No. 23-2551-EFM-RES, 2024 WL 4894160 (D. Kan. Nov. 26, 2024). Highly summarized, this case arises out of two separate agreements—one between Plaintiff and First Health and another between First Health and Cox—to provide medical services. *Id.* at \*1. Plaintiff provides medical services as a hospital, and First Health establishes a network of hospitals that payors—such as Cox—can access for medical services. *Id.*

This case has been pending for more than a year, and Plaintiff has amended its complaint twice already. Plaintiff originally filed this case in state court on November 16, 2023. ECF No. 1-1 at 2. First Health removed the case to federal court on December 23, 2023. ECF No. 1. On January 30, 2024, Plaintiff filed a First Amended Complaint, adding Defendant Cox and an additional Defendant that was later voluntarily dismissed. *See* ECF Nos. 24 (first amended complaint), 95 (notice of voluntary dismissal). The Court additionally granted an Unopposed Motion for Leave to File a Second Amended Complaint, ECF No. 81, and Plaintiff filed its Second Amended Complaint on June 10, 2024. ECF No. 85.

On April 24, 2024, the Court entered a Scheduling Order, which set a deadline of May 31, 2024, for any motions to amend. ECF No. 63 at 2. Plaintiff's motion seeking to file its Second Amended Complaint was filed on that deadline. ECF No. 77. The Scheduling Order also imposed a November 22, 2024 discovery deadline. ECF No. 63 at 2. Although the Court ultimately extended the discovery deadline up to and including February 5, 2025, it did not extend the May 31, 2024 deadline for motions to amend the pleadings. ECF No. 128 (imposing the February 5, 2025 discovery deadline).

Both First Heath and Cox filed motions to dismiss shortly after Plaintiff filed its Second Amended Complaint, which the Chief District Judge granted in part and denied in part on November 26, 2024. *See generally MidAmerica Div. Inc.*, 2024 WL 4894160. Three claims remain in this case: (1) a breach-of-contract claim against First Health for failing to ensure that Plaintiff was paid according to the rates listed in the parties' Model Facility Agreement ("MFA") and for failing to collect unpaid amounts owed for disputed claims and transferring those funds to Plaintiff; (2) a declaratory judgment claim against First Health; and (3) a quantum meruit claim

against Cox for the reasonable value of medical services provided to Cox and Cox's members for which Plaintiff was not reimbursed.

As is relevant to the present Motion, the Chief District Judge dismissed Plaintiff's breach-of-contract claim against First Health under a secondary theory that First Health breached the implied covenant of good faith and fair dealing, the claim that Plaintiff now seeks to replead. In dismissing the theory of recovery, the Chief District Judge explained:

> While Plaintiff pleads the breach of the implied covenant of good faith and fair dealing as a secondary theory for breach of contract, it fails to adequately plead what term of the contract that First Health allegedly violated by failing to abide by the good faith spirit of that term. Instead, Plaintiff makes broad conclusory allegations that First Health owed Plaintiff a duty of good faith and fair dealing under the Agreement, First Health's conduct injured Plaintiff's rights to receive the fruits of the agreement, and First Health breached the covenant of good faith and fair dealing. Plaintiff wholly fails to point to a specific term of the Provider Agreement, and thus, fails to allege the First Health failed to abide by the covenant of good faith and fair dealing. Consequently, Plaintiff fails to sufficiently plead a breach of the implied covenant of good faith and fair dealing. Therefore, the Court grants First Health's motion as to this theory.

*Id.* at *4. Plaintiff has never moved to reconsider this order.[1]

On Wednesday, January 28, 2025,[2] approximately one week before the close of discovery, Plaintiff deposed First Health's Fed. R. Civ. P. 30(b)(6) corporate designee, Ralph Borzillo, during which time Plaintiff claims it learned for the first time that First Health does not ensure that health plans, such as Cox, pay Plaintiff correctly. ECF No. 146 at 4. Plaintiff's Motion alleges this new

---

[1] *See generally Black v. Union Pac. R.R. Co.*, No. 23-1218-EFM-ADM, 2024 WL 3741404, at *4 (D. Kan. Aug. 9, 2024) (ruling on a motion to amend to reassert dismissed claims but noting that moving to reconsider a district judge's ruling dismissing the claim "probably would have been a more efficient approach").

[2] First Health repeatedly references that this deposition occurred on January 30, 2025. ECF No. 152 at 4. Whether the deposition occurred on January 28 or January 30 does not impact the Court's analysis and decision.

3

information learned on January 28, 2025, prompted its Motion and makes additional arguments as to why Plaintiff could not have amended sooner. *See generally* ECF No. 146. But Plaintiff did not file a motion to amend during the remainder of January or at any point in February.

Instead, when the parties submitted their proposed pretrial order to the Magistrate Judge's chambers via email on February 14, 2025, the draft informed the Court for the first time that Plaintiff "expects to move for leave to amend the Second Amended Complaint to assert a claim against First Health for breach of the covenant of good faith and fair dealing and because discovery has revealed that First Health only 'repriced' claims and admittedly did nothing else." The proposed pretrial order further stated that Plaintiff sought leave to amend "based on new information learned in discovery and depositions of Rule 30(b)(6) representatives."

Despite stating that it intended to move for leave to amend, by the time the Court convened the final pretrial conference on Tuesday, March 4, 2025—more than two weeks after the submission of the draft pretrial order—Plaintiff had not filed a motion to amend. During the final pretrial conference, counsel represented that Plaintiff had the Motion prepared and ready to file but believed that the Court would want to discuss the matter first.

Ultimately, Plaintiff did not file the Motion until 5:37 p.m. on Friday, March 7, 2025, more than eight months after the deadline for motions to amend the pleadings, more than a month after purportedly learning of new information that forms the basis for the Motion, and three days after the Court convened a final pretrial conference during which time the Court expressed concerns as to the timeliness of the Motion.

4

**II.    DISCUSSION**

    **A.    Legal Standard[3]**

When a party moves to amend the pleadings after the deadline established in the scheduling order, as is the case here, the moving party must demonstrate "(1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). "Rule 16(b)(4) is arguably more stringent than Rule 15, permitting scheduling order amendments 'only for good cause and with the judge's consent.'" *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019-20 (10th Cir. 2018); *Seale v. Peacock*, 32 F.4th 1011, 1031 (10th Cir. 2022) (same). If the movant does not establish good cause under Rule 16(b)(4), the Court must deny the motion and need not consider the second step of the analysis—whether to permit amendment under Rule 15. *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 990 (10th Cir. 2019); *see also Gorsuch*, 771 F.3d at 1241 (characterizing the showing of good cause as "the threshold inquiry to consider whether amendments should be allowed after a scheduling order deadline has passed").

For the reasons explained below, the Court finds that Plaintiff has not established good cause under Rule 16(b)(4) and denies the Motion on this basis. But even if the Court were to find good cause, the Court would deny this Motion pursuant to Rule 15(a)(1) because Plaintiff has unduly delayed in moving to amend, and First Health would be unduly prejudiced if the Court allowed the amended pleading.

---

[3] Plaintiff's Motion contains a legal standard section citing several cases that Defendant First Health contends are inapposite or which actually support First Health's position. ECF No. 152 at 3 n.2. In reply, Plaintiff argues that these cases highlight the importance of flexibility with respect to scheduling order deadlines. ECF No. 155 at 4-5. The Court has set out the applicable legal standard in this order, and the parties' disagreement as to the cases cited in the legal standard section of Plaintiff's Motion does not alter the Court's own statement of the law or the conclusions reached in this order.

### B.      Rule 16(b)(4)'s Good-Cause Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with a judge's consent." The good-cause standard "requires the movant to show the scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Gorsuch*, 771 F.3d at 1240 (brackets in original) (internal quotations omitted). A party may satisfy this standard, for example, if it learns of new information through diligent discovery efforts or if the underlying law has changed. *See id.* Nevertheless, if a party knows of the conduct underlying the amendment but simply fails to raise the claims, they are barred. *Id.*

Plaintiff has not established good cause for two reasons. *First*, assuming that Plaintiff exercised diligence and could not have learned about the alleged new information disclosed during the January 28, 2025 deposition any earlier, Plaintiff has not established good cause for failing to move to amend immediately and instead waiting until March 7, 2025, to file its Motion. *Second*, Plaintiff has not shown that any purportedly new information learned at the January 28, 2025 deposition could not have been learned far sooner through diligent discovery efforts and that the motion to amend—premised on this alleged new information—could not be filed any earlier than March 7, 2025, after the Court held the final pretrial conference. Both issues are discussed below.

### 1.      Plaintiff's Material Delay Following the January 28, 2025 Deposition

The Court begins with the January 28, 2025 deposition because Plaintiff alleges that this deposition "revealed that First Health not only breached the contract between the parties, but that First Health made no attempt to carry out its contractual obligations." ECF No. 146 at 4, ¶ 22. Plaintiff states that this "[t]his information was unknown to the Hospital through the discovery it received prior to the admissions at the 30(b)(6) deposition of First Health's representative." *Id.* at ¶ 23.

"Even when a party learns of new information through discovery, it must still act diligently in moving to amend." *Bertels v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 20-2298-JWB-ADM, 2021 WL 533827, at *4 (D. Kan. Feb. 12, 2021) (explaining that a plaintiff did not establish good cause by waiting two months to move to amend after taking the deposition that allegedly put plaintiff on notice of a potential amendment); *see also Husky Ventures*, 911 F.3d at 1020 (explaining that knowing of allegedly new information for months before moving to amend "fatally undercuts [the movant's] ability to demonstrate good cause").  It is not enough for Plaintiff to point to purportedly new information learned after the deadline for amendments if Plaintiff then fails to immediately act on that new information.  Rather, the moving party must demonstrate good cause to extend the deadline up to the time it files its motion to amend.  *See Vivint, Inc. v. N. Star Alarm Servs., LLC*, No. 2:16-cv-00106-JNP-EJF, 2018 WL 3215663, at *3 (D. Utah Feb. 5, 2018) ("The moving party must show good cause for failing to move to amend prior to the cutoff date and for the length of time between learning of the new information warranting amendment and moving to amend"), *report and recommendation adopted in part sub nom. Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 2:16-cv-00106-JNP-EJF, 2018 WL 1449516 (D. Utah Mar. 23, 2018).

Even assuming that Plaintiff both diligently sought this information and, despite this diligence, could not have learned this information before January 28, 2025, Plaintiff failed to diligently pursue an amendment based on this information.  Plaintiff did not immediately move for leave to amend its complaint or to otherwise modify the existing scheduling order.  Instead, Plaintiff apparently spent the following weeks awaiting deposition transcripts and drafting the proposed pretrial order, which would require material revisions if the Court were to grant leave to amend.

When the parties submitted their proposed pretrial order to the Magistrate Judge's chambers via email on February 14, 2025, Plaintiff stated it "expects to move for leave to amend the Second Amended Complaint . . . ." But despite this statement, by the time the Court convened the final pretrial conference on March 4, 2025—more than two weeks after the submission of the draft pretrial order and more than a month after the January 28, 2025 deposition—Plaintiff had not filed a motion to amend.[4]

Plaintiff acknowledges that "while counsel for [Plaintiff] could have filed the Motion to Amend last month, or contemporaneous with the Draft Pretrial Order on February 14, [counsel] believed (albeit mistakenly) that the Court would want to discuss all anticipated motions at the Pretrial Conference on March 4, 2025 before filing." ECF No. 146 at 10. Plaintiff never asked the Court whether it requested that Plaintiff delay filing the Motion until after the final pretrial conference. If it had, the Court would have informed Plaintiff that it should file the Motion immediately given the late stage of the case, because Plaintiff knew Defendant opposed the request to amend, and because the Chief District Judge previously dismissed this exact claim in ruling on Defendants' motions to dismiss.[5]

---

[4] While the model pretrial order has a section entitled Amendments to Pleadings, the instructions tell the parties to "State 'None' in the usual case. Otherwise, provide a concise statement of any currently proposed amendments beyond any abandoned claims and defenses previously noted. Also, state whether a motion to amend has been filed." Plaintiff does not provide any authority that this section is intended to supersede D. Kan. Rules 7.1 and 15.1 when a party is attempting to re-add an opposed cause of action after the close of discovery, well after the deadline to amend pleadings and after the claim had been previously dismissed.

[5] Plaintiff alleges that "based on the Local Rules for the District of Kansas, it appeared to [counsel for Plaintiff] that the Court generally preferred conferences prior to filing Motions." ECF No. 146 at 10. Plaintiff does not reconcile its belief with the plain language of D. Kan. Rules 6.1, 7.1 and 15.1—the local rules applicable to this Motion. Plaintiff instead relies on D. Kan. Rule 37.1(a). That Rule requires a pre-motion discovery conference with a Magistrate Judge before filing any disputed discovery-related motion. It does not apply to motions to amend the pleadings. *See, e.g.,* D. Kan. Rule 37.2 (listing types of disputes and federal rules that require

Ultimately, Plaintiff did not file the Motion until March 7, 2025, more than eight months after the deadline for motions to amend the pleadings, more than a month after purportedly learning the new information that is the basis for the Motion and three days after the Court convened a final pretrial conference during which time the Court expressed serious concerns as to the timeliness of any request to re-add a previously dismissed claim during the pretrial order process.

Plaintiff simply has not demonstrated good cause for its failure to act expeditiously following the January 28, 2025 deposition. For this reason alone, Plaintiff's Motion is denied.

### 2. Plaintiff's Diligence

But even if Plaintiff had acted with diligence following the January 28, 2025 deposition, Plaintiff does not explain why it could not have discovered this information sooner through diligent discovery efforts and consequently moved to amend far sooner. *First*, the information purportedly learned at the deposition is not truly unexpected information because it ties back to allegations Plaintiff raised in its original complaint. *Second*, Plaintiff fails to establish its diligence in attempting to learn this information earlier in the lengthy discovery period.

According to Plaintiff, it "just learned the new and unanticipated information for the first time on January 28, 2025." ECF No. 146 at 10. The Court does not find a basis to conclude that the information was, in fact, unanticipated and not capable of being discovered far sooner. In articulating the purportedly new information learned at the deposition, Plaintiff states that "First Health led the Hospital to believe that it would make efforts to carry out that promise (including by collection if necessary), the Hospital was surprised to learn that First Health does not even

---

a discovery conference and not including Rule 15 motions to amend the pleadings). Even if it did, Plaintiff did not immediately request a pre-motion conference with the Magistrate Judge.

bother to keep track, or even ask, whether the payors with whom First Health contracted were paying the Hospital correctly, much less timely, or even at all." ECF No. 146 at 5, ¶ 25.

The record does not support this claim of surprise. In Plaintiff's original complaint, filed before any discovery was conducted in this litigation, Plaintiff stated that "First Health made it clear that it had no intention to honor its contractual obligations to ensure the Hospital received full reimbursement at the agreed rates." ECF No. 1-1 at 3, ¶ 5. Plaintiff additionally alleged that "First Health never collected the amounts due from the Payors or transferred the amounts owed to the Hospital as required under the Provider Agreement." *Id.* at 9, ¶ 36. Under Plaintiff's Count I, Breach of Contract, Plaintiff stated that "First Health was obligated to collect all unpaid amounts" but that First Health did not "collect the unpaid amounts and transfer them to the Hospital[.]" *Id.* at 10, ¶¶ 46-47. Plaintiff alleged that this conduct violated both the express terms of the contract and the implied covenant of good faith and fair dealing. *Id.* at 11, ¶ 54.

From the inception of this lawsuit, Plaintiff has alleged that First Health "had no intention to honor its contractual obligations to ensure the Hospital received full reimbursement at the agreed rates." ECF No. 1-1 at 3, ¶ 5.[6] Presumably Plaintiff had some factual basis for making this claim in its original complaint. While the deposition may have revealed one of the ways in which First Health purportedly did not intend to enforce the contract, Plaintiff could—and should—have obtained discovery on the very allegations it has asserted from the day it filed this lawsuit.

Indeed, First Health argues that Plaintiff did just that, by serving interrogatories. First Health served its responses on October 17, 2024, which state in relevant part:

---

[6] Along the same lines, Defendant First Health notes that the operative Second Amended Complaint alleges that "First Health never collected the amounts due from Cox or IMG and never transferred the amounts owed to [Plaintiff] as required under the Provider Agreement." ECF No. 152 at 5 (quoting the Second Amended Complaint).

10

> **First Health Answer to Interrogatory No. 7 (in part):** For the Disputed Claims, First Health is not the Payor, First Health did not conduct Utilization Review, First Health did not issue payment to Plaintiff, and First Health was not responsible for appeals.
>
> **First Health Answer to Interrogatory No. 12 (in part)**: The factual basis for First Health's defenses include, but are not limited to, First Health is not the Payor under the Model Facility Agreement; First Health did not pay (and is not responsible for paying) the Disputed Claims; First Health had no duty to collect unpaid amounts from the Payors.

ECF No. 152 at 6.[7] Plaintiff does not address this issue in its reply brief or explain why the interrogatory responses—where First Health stated it had "no duty to collect unpaid amounts"—failed to put Plaintiff on notice that either (1) Defendant First Health was taking no action to ensure that Plaintiff received payment from its payors (2) or—at a minimum—that there was a distinct possibility that First Health was taking no action, in which case Plaintiff should have engaged in follow-up discovery on the issue promptly.

Discovery in this litigation has been open since at least January 9, 2024, which means Plaintiff had more than a full year to conduct discovery.[8] Although D. Kan. Rule 26.3(b) requires

---

[7] Defendant First Health also notes that it took a similar position in the briefing on the motion to dismiss. Specifically,

> For example, in its Motion to Dismiss the Second Amended Complaint filed on *July 8, 2024 (more than eight months ago)*, First Health asserted that the Model Facility Agreement (the "MFA") that Plaintiff sues upon provides that Plaintiff shall be *paid by the respective Payor*; underpayments may be recovered *from the Payor*; and final decisions on payment determination and claim processing shall *rest with the Payor(s)*. *See* Dkt. 96 at pp. 4-5 & 8; Dkt. 124 at pp. 1-2.

ECF No. 152 at 6 (emphasis original).

[8] *See* Fed. R. Civ. P. 26(d)(1) (explaining that discovery is generally open after the parties hold their Fed. R. Civ. P. 26(f) planning conference). On December 18, 2023, the Court entered its Initial Order Regarding Planning and Scheduling. ECF No. 9. The Order set a deadline of January 9, 2024, for the parties to conduct their Rule 26(f) conference. *Id.* at 1.

11

parties to file certificates of service reflecting the service of discovery requests and responses, the Court cannot find on the docket any certificate of service reflecting Plaintiff's service of requests for production or interrogatories.

Presumably Plaintiff served some written discovery, including the interrogatories discussed above, but the Court cannot evaluate Plaintiff's overall diligence because the docket does not provide a record as to when Plaintiff served any such discovery or the nature of that discovery. Plaintiff's Motion and Reply are conspicuously silent as to when it served any written discovery, including any follow-up discovery that could have explored First Health's October 17, 2024 interrogatory responses. While Plaintiff alleges that the "information was unknown to the Hospital through the discovery it received prior" to the 30(b)(6) deposition, ECF No. 146 at 4, there is simply no record for why Plaintiff did not or could not have learned the deposition testimony from written discovery that could have been served more than a year ago.

Instead, Plaintiff waited until just days before the close of an already-lengthy discovery period to take Defendant First Health's Rule 30(b)(6) deposition. It does not appear that Plaintiff served a 30(b)(6) notice on either Defendant until January 8, 2025. ECF No. 138.

Plaintiff cites to a litany of reasons for why it could not schedule this deposition sooner. Specifically, the Motion notes lead counsel's surgery in October 2024 and subsequent recovery time, which delayed the parties' ability to complete certain depositions. ECF No. 146 at 2. Plaintiff also points to substitution of lead counsel, scheduling difficulties, and the unexpected surgery of Plaintiff's own Rule 30(b)(6) witness in January 2025. *Id.* at 9. Again, pointing to generalized scheduling challenges does not explain why, despite more than a year of discovery, a party's 30(b)(6) deposition was not scheduled sooner or why the purported new information underlying the amendment could not have been learned far sooner through other means.

12

Plaintiff argues that because the discovery period was extended, "it would be, respectfully, antithetical not to allow the parties to amend their pleading to confirm to evidence revealed during the extended discovery period." ECF No. 146 at 9. Notably, any party could have moved for an extension of the May 31, 2024 deadline for amendments to the pleadings, but no party did. Granting the parties' extensions of remaining Scheduling-Order deadlines was not an invitation to revisit or revive at this late stage of the case an entirely different Scheduling Order deadline that passed months ago. And even if a party had moved for an extension of the deadline for amendments to the pleadings, the Court would not have imposed a deadline that fell *after* the close of discovery and after the final pretrial conference.

In sum, even if the Court found (which it does not) that the January 28, 2025 deposition was the first time Plaintiff learned of this alleged new information triggering the proposed amendment and that it could not have learned of it sooner, Plaintiff's delay in waiting to move to amend until March 7, 2025 has fatally undercut its ability to establish good cause to render the Motion timely, and the Motion is denied on this basis. Additionally, the Court disagrees that despite diligent efforts, Plaintiff could not have learned of this alleged new information far sooner during the lengthy discovery period in this case and moved to amend in a timelier fashion—certainly well before the Court was conducting a final pretrial conference.

**B.     Rule 15 Standard[9]**

Because the Court does not find that Plaintiff has established good cause for its untimely request to amend, the Court need not reach whether leave should be granted pursuant to Rule 15(a). But the Court briefly discusses Rule 15(a) because it provides another reason for why the Court would not grant leave at this stage of the litigation.

Federal Rule of Civil Procedure 15(a) provides that unless an amendment is allowed as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule further instructs that courts should "freely give leave when justice so requires." *Id.* A court may deny a motion to amend on the grounds of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1101-02 (10th Cir. 2019) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendant First Health opposes the Motion on the grounds of undue delay, undue prejudice, and futility. *See generally* ECF No. 152. The Court addresses the first two arguments but declines to reach the issue of futility given the multiple separate bases on which the Motion is deniable.

---

[9] Plaintiff's Motion contains a legal standard section invoking Rule 16(b)(4) and 15(a)(1). ECF No. 146 at 6. Despite this, page 11 of the Motion inexplicably states that it is "essentially moving to amend its Complaint to conform to the evidence it will present at trial now, as opposed to during or after trial, in accordance with Rule 15(b)(1), which 'the court should freely permit.'" *Id.* at 11. Rule 15(b)(1) expressly contemplates amendments during trial and would not apply in this context. *See McArtor v. Valsoft Corp., Inc.*, No. 1:23-CV-00136-SWS, 2025 WL 357783, at *3 (D. Wyo. Jan. 31, 2025) ("Further, the Court finds that any argument made under Rule 15(b)(1) is premature, as the terms of that provision explicitly contemplate amendment during trial.").

### 1. Undue Delay

Delay alone is not enough to deny a motion to amend. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). But, at some point, delay becomes undue when it places an unwarranted burden on the Court or when it becomes prejudicial by placing an unfair burden on the opposing party. *Id.* In analyzing whether the delay was undue, the Court focuses primarily on the reasons for the delay, and the Court may deny a motion to amend where the moving party lacks an adequate explanation. *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).

The Rule 15 good-cause standard is similar to the undue delay analysis. *S.G. v. Shawnee Mission Sch. Dist., USD No. 512*, No. 20-2078-JAR-ADM, 2022 WL 3646221, at *5 n.46 (D. Kan. Aug. 24, 2022) (citing *Minter*, 451 F.3d at 1205 n.4). For the same reasons explained above, the Court finds Plaintiff has unduly delayed in seeking leave to amend.

### 2. Undue Prejudice

Undue prejudice is the most important factor the Court analyzes when evaluating a motion to amend pursuant to Rule 15. *Minter*, 451 F.3d at 1207. Courts typically find undue prejudice if the proposed amendment affects the opposing parties in terms of preparing their defense. *Id.* Additionally, courts have recognized that a party can be unduly prejudiced when an opposing party moves to amend at a late stage of the case, even when the amendments arise from the same subject matter already pleaded. *See Bertels*, 2021 WL 533827, at *6 (explaining that defendant would be unduly prejudiced by the amendment given the late stage of the case and because discovery is now closed); *see also Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *4 (D. Kan. June 30, 2008) ("This court agrees with the magistrate judge that 'to grant [P]laintiff leave to amend her complaint at such a late point in the case would cause defendant undue prejudice and would likely result in a delay of the trial.'").

Plaintiff argues that no "opposing party can articulate any reason why it would be prejudiced by the amendment," and then appears to argue that First Health is not entitled to any new discovery if this revived claim is added. ECF No. 146 at 12 ("If First Health needs additional information based on the proposed Amendment, it need only review the deposition transcript of, or visit with, its own corporate representative."); *see also* ECF No. 155 at 6 ("Because the allegations are based on the Hospital's discovery of information that has, at all times, been known to First Health, no party would need any further discovery to develop its claims or defenses.").

Not surprisingly, First Health argues that an amendment to the pleadings at this late stage of the litigation "would significantly delay this case and prejudice First Health." ECF No. 152 at 4. Specifically, First Health notes that discovery had been closed for more than a month at the time Plaintiff filed its motion. *Id.* at 11. First Health is now preparing its summary judgment motion, and an amended complaint would require First Health to file a new motion to dismiss regarding the proposed repleaded theory. *Id.* If the Court did not grant a motion to dismiss, First Health would then seek leave to reopen discovery, all delaying a case that has been pending since 2023 and is now at the summary-judgment stage. *Id.*

The Court agrees and additionally notes that both the Court and the parties have spent ample time working to finalize a pretrial order in this case—a process that would ultimately start over if the Court granted the Motion and allowed Plaintiff to file a Third Amended Complaint. Plaintiff had sufficient time to either seek reconsideration of the Chief District Judge's ruling or to move to amend far sooner. It did neither. Allowing Plaintiff to attempt to replead a dismissed theory of recovery at this late stage is unduly prejudicial to First Health (and likely Cox as well) and would unreasonably delay this case.

### III.   CONCLUSION

For the reasons explained above, the Court denies the Motion because Plaintiff has not established good cause under Rule 16(b)(4) for its untimely March 7, 2025 Motion to Amend. Additionally, the Court finds that Plaintiff has unduly delayed in moving to amend and that First Health would be unduly prejudiced if the Court allowed the belated amendment, each of which standing alone constitutes a separate and distinct basis to deny the Motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Third Amended Complaint, ECF No. 146, is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 31, 2025, at Topeka, Kansas.

/s/ Rachel E. Schwartz
Rachel E. Schwartz
United States Magistrate Judge